**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

AUG 2 8 2008

J.T. NOBLIN, CLERK
BY_____DEPUTY

**DONALD ROBOHM and**
**NATALIE ROBOHM,**

                                                        **PLAINTIFFS**

**VERSUS**                          CIVIL ACTION NO.: 1:08CV490LG-RHW

**STATE FARM FIRE & CASUALTY COMPANY; STATE**
**FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**
**and STATE FARM JOHN DOES, One through Fifteen**          **DEFENDANTS**

## COMPLAINT

COME NOW the Plaintiffs, DONALD AND NATALIE ROBOHM ("The Robohms"), by and through their undersigned attorneys, without waiver of the prior allegations set forth in the original complaint and hereby files this Complaint against the Defendants, STATE FARM FIRE & CASUALTY COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND STATE FARM JOHN DOES, ONE THROUGH FIFTEEN ("State Farm") and allege the following:

### General Allegations

1.    This is an action for damages in excess of the jurisdictional limits of this Court, as well as for declaratory relief pursuant to Fed. R. Civ. P. 57, and for additional equitable relief.

2.    Jurisdiction is proper in this Court under 28 U.S.C. §1332(a) because complete diversity exists among the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. The properties insured by the Defendant's Policy at issue in this case is situated in this judicial district, and a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district. Venue is proper in this Court under 28 U.S.C. §1391, the general statute, including subsections (a) and (c) thereof.

3.    At all times material hereto, Donald and Natalie Robohm were Mississippi residents owning property located at Mississippi and 423 East Beach Drive, Ocean Springs, MS, Jackson County, Mississippi.

4.    At all times material hereto, State Farm was and is a foreign corporation duly authorized to conduct the business of insurance in the State of Mississippi, and was and is engaged in the business of insurance in Jackson County, Mississippi and throughout the State of Mississippi. State Farm Mutual Automobile Insurance Company is a foreign insurance company doing business within the State of Mississippi, with its corporate headquarters located at One State Farm Plaza, Bloomington, Illinois 61710. State Farm Mutual Automobile Insurance Company is the 'parent' company to State Farm Fire and the sole owner of State Farm Fire. Moreover, State Farm Mutual Automobile Insurance Co. provides various consulting services to State Farm Fire for which it is paid substantial fees. Defendants, John Does 1 through 15 are persons and entities who caused or contributed to the injuries and damages of the Plaintiffs, but whose true identity and/or liability have not been ascertained at this time. These Defendants may include, but not be limited to, State Farm General Insurance Company, State Farm Life Insurance Company and State Farm Mutual Automobile Insurance Company, and/or other personal and entities, including but not limited to agents, engineers or adjusters who are affiliated with the Defendants and/or who have acted in concert with Defendants, and who participated in the torts of those Defendants to such a degree as to make them individually liable to the Plaintiffs under Mississippi law, but whose identified and liability are currently unknown. All allegations and claims asserted herein against "State Farm" are incorporated herein by reference against John Does 1 through 15. Said John Does, when their true identifies are known and their liability ascertained, will be identified by name and joined in this action, if necessary,

pursuant to the Mississippi Rules of Civil Procedure. Allegations in this Complaint against "Defendants" are made jointly against all named Defendants, and all John Doe Defendants.

5.    In consideration of the premiums paid, State Farm issued to Donald and Natalie Robohm in Ocean Springs, Jackson County, Mississippi, a policy of bearing policy number 24-12-1431-9 ("the homeowner's policy"). This Policy was in full force and effect when total damage occurred to the insured property located at 423 East Beach Drive, Ocean Springs, MS as a result of hurricane and/or hurricane force winds from Hurricane Katrina on or about August 29, 2005.

6.    As a result of the devastation caused by Hurricane Katrina, The Robohms' insured home was completely destroyed, together with all contents or personal property situated herein, as well as all other structures located at or upon the insured property.

7.    Hurricane and/or windstorm damages and ensuing damages as a result thereof are covered by the homeowner's policy issued by State Farm. The Policy is an "all risk" homeowners policy, such that once the insured demonstrates that a fortuitous loss occurred during the policy period, the burden on the insurer to prove that any exclusion to coverage applies to preclude coverage for the loss. Specifically the homeowners and the rental Policy contain the following insuring provision:

### SECTION I – LOSSES INSURED

**COVERAGE - A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION 1 - LOSSES NOT INSURED.**

8.    The State Farm homeowners Policy issued to the Robohms contains Form FP-7955, which expressly states on its cover: "This is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars."

9.    After their insured property sustained extensive damage and destruction as a result of Hurricane Katrina, the Robohms properly and promptly submitted a claim to State Farm, seeking to obtain benefits under the homeowners Policy, as was their rights.

10.    State Farm denied benefits while under the Policy specifically included was coverages for losses to their dwelling and extensions [Coverage A], to their personal property [Coverage B] and loss of use and losses which will be proved at trial. State Farm denied the Plaintiffs' claims.

11.    The Robohms purchased the homeowners policy from State Farm as a way to insure against property damage that could potentially result from hurricanes impacting the Mississippi Gulf Coast, including any and all damage proximately, efficiently, and otherwise caused by hurricane-force wind, rain and water.

12.    When selling the homeowners and rental Policy to the Robohms, and subsequently collecting premiums under the Policy, State Farm expressly and/or implicitly represented to its insureds that they would have full and comprehensive coverage for any and all hurricane damage, including any and all damage proximately, efficiently and typically caused by hurricane wind, rain and water.

13.    Because of the representations of coverage made by State Farm, as well as State Farm's expressed and implicit promises, the Robohms were left with the belief and reasonable expectation that the homeowners and rental Policy would provide full and comprehensive coverage for all hurricane-related damage sustained to the insured's residence. However, following the Robohms' Hurricane Katrina loss, State Farm took the

position that the Policy do not cover any of the Robohms' hurricane-related damage, based on the theory that damage caused by flood, surface water, and waves is specifically excluded from coverage, whether driven by wind or not, thus refusing to provide any benefits under the Policy.

14.     Mississippi's insurance law in existence for the last forty years mandates full insurance coverage if the covered event, in this case hurricane wind and water, was the efficient proximate cause of the loss. Nevertheless, State Farm asserts entitlement to raise the exclusionary clause at issue based on the theory that the lead-in clause to the exclusion provides an 'anti-concurrent causation' exception to this Rule with the following language:

> "We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events."

15.     However, the language relied upon by State Farm does not operate to contract around Mississippi's efficient proximate cause rule. Thus, in the instant case, the risk insured against the winds of the hurricane, set in motion the historic storm surge that hit the Mississippi Gulf Coast on August 29, 2005. In an unbroken sequence between the insured risk and the ultimate loss to the Robohms, the winds of Hurricane Katrina were the efficient proximate cause of the entire loss. Thus, under the State Farm Policy and Mississippi law, State Farm is liable for the entire loss suffered by the Robohms, even if water damage was involved in the damage to the insured property.

16.     Additionally, as the Policy at issue are "all risk" Policy, all risks of accidental direct physical loss are covered by the Policy unless specifically excluded by the terms of the contract. In such Policy, an insured such as the Robohms only have the burden or showing the existence of a fortuitous loss, at which time the burden of proof shifts to the

insurer, State Farm to establish the applicability of a named exclusion under the facts of the case and the terms of the policy.

17.    In this case, there is no question that the Robohms have established a loss that is covered by the general insuring language of the Policy. Thus, State Farm has the burden to prove that the loss would not have occurred in the absence of the excluded event. State Farm does not and will no meet this burden of proof.

18.    An insurance contract is a contract of adhesion, and should be construed in the light most favorable to the insured.

19.    The concept of insurance is that insurance in the insurer's granting of prompt indemnity or security against a contingent loss.

20.    Inherent in any insurance contract is the premise that payment must be made promptly so that the insured may mitigate his or her damages and be put back into the position he or she was, prior to the loss, and as quickly as possible.

21.    A special relationship exists between an insurer and its insured, and is commonly described as one of the utmost of good faith and fair dealing.

22.    In Mississippi, the work of adjusting insurance claims engages the public trust.

23.    The Robohms have complied with all conditions precedent to obtaining payment of benefits under the homeowners and rental Policy from State Farm, and State Farm has waived and/or is estopped from raising such conditions precedent.

24.    Donald and Natalie Robohm have dutifully paid premiums to State Farm over the course of their contractual relationship and the Robohms have performed all of their duties and obligations with regard to the subject policy of insurance and with regard to the claims that are the subject of this litigation.

25.    Based on information and belief, State Farm, and other insurance companies doing business in the State of Mississippi, sought and obtained premium rate increases, and/or retained risk (deductible) increases, for the homeowners' policy from the Mississippi Department of Insurance, by arguing significant increases were justified due to hurricane risks associated with Coastal properties. State Farm and other insurance companies in the State of Mississippi have not many years utilized hurricane-specific experience ratings and computer-model projections of hurricane losses prepared by the insurance company(s)' own actuaries (or outside vendors) to requested rate increases in an alleged effort to pass along to Mississippi insureds, such as the Robohms, the expected or projected costs of hurricane losses along the Gulf Coast. This "hurricane risk" was the alleged predominant driving force behind certain premium rate increases requested and received by State Farm. Upon information and belief, the Mississippi Department of Insurance granted rate increases on a regular basis since approximately the late 1990s in reliance upon the State Farm's representations concerning the hurricane-specific losses that Defendants' and other insurers would be projected to have under homeowner's and rental Policy similar to the Robohms'. Upon information and belief, Defendants actively induced the Mississippi Department of Insurance to approve these rate increases by arguing they were necessary to cover additional risks specifically related to named storm threats.

26.    In the late 1990s and after Hurricane George, Defendants and other insurers doing business in Coastal Mississippi informed insureds, including the Robohms, that a

mandatory modification of the Policy raising the deductible for hurricane-caused losses was being imposed. The Robohms, and similarly situated insureds, were offered the option of retaining additional risk by agreeing to a mandatory "hurricane deductible", or in the alternative, paying an increased premium to ensure coverage for any and all damage to their insured dwellings, contents and other property directly and/or proximately caused by a named storm. The Robohms, and similarly situated insureds, reasonably expected that losses caused by named storms, such as hurricanes, would be covered under their homeowners' and rental Policy in return for accepting these increased deductibles and/or premiums.

27.    The subject rental policy of insurance could have, but did not contain an exclusion for hurricane related 'storm surge'. The rental policy did provide coverage for hurricanes; however, which are known to cause damages by both wind and 'storm surge'.

## DECLARATORY JUDGMENT

28.    This is an action for declaratory judgment pursuant to Fed.R.Civ.P. 57.

29.    This action for declaratory judgment has been filed for the purpose of determining an actual controversy between the Plaintiffs, the Robohms, and the Defendant, State Farm.

30. On the occasion of Hurricane Katrina, the Robohms' insured properties sustained extensive damage and loss, resulting in the total devastation of their homes. However, State Farm's position has been that it owes no obligation to provide any benefits to the Robohms for their loss and damage, relying on the exclusions to coverage contained in their policy.

31.     State Farm's position is that lead-in sentence to paragraph 2 of SECTION I – LOSSES NOT INSURED, is an "anti-concurrent causation" clause, such that all coverage is precluded for the Robohms' loss if any "water damage" occurred in combination with wind and/or rain damage to cause the loss to the insured premises.

32.     The Robohms' position is that State Farm breached its policy obligations to its insureds, the Robohms, and that State Farm owes coverage for the damage sustained due to Hurricane Katrina at the insured property.

33.     The Robohms' position is that the exclusionary clause relied upon by State Farm does not operate as an "anti-concurrent causation" clause sufficient to contract around Mississippi's efficient proximate cause doctrine as relating to insurance policy interpretation, so that the damage is covered by the Policy, since the winds of Hurricane Katrina were the efficient proximate cause of the damage to the insured property.

34.     The Robohms' position is that the State Farm Policy is an "all risk" policy, under which all risks of accidental direct physical loss to the insured property are covered unless specifically excluded by the terms of the policy.

35.     The Robohms' position is that the lead-in sentence relied upon by State Farm as being an "anti-concurrent causation" clause only applies to any damage which "would not have occurred in the absence of the excluded event".

36.     The Robohms' position is that, in order to deny coverage for their Hurricane Katrina claim under the pertinent policy exclusion at issue, State Farm has the burden to prove that the loss would not have occurred in the absence of the excluded event.

37.    The Robohms' position is that State Farm has not met its burden of proof, and the loss and damage is covered under the Policy.

38.    As a result of the facts set forth herein, the parties are uncertain to their rights and obligations under the policy, and there exists a present, ascertainable set of facts concerning the rights and obligations of both the Robohms and State Farm under the Policy.

39.    The rights and obligations of both the Robohms and State Farm under the homeowners and rental Policy are dependent upon the facts and law applicable to the facts affecting coverage under the Policy.

WHEREFORE, the Plaintiffs, the Robohms, respectfully seek a declaration from this Court that:

(a)    State Farm breached its policy obligations to its insured, the Robohms, and State Farm owes coverage for the damage sustained due to Hurricane Katrina at the insured properties;

(b)    The exclusionary clause relied upon by State Farm does not operate as an "anti-concurrent causation" clause sufficient to contract around Mississippi's efficient proximate cause doctrine as relating to insurance policy interpretation, so that the damage is covered by the Policy, since the winds of Hurricane Katrina were the efficient proximate cause of the damage to the insured properties;

(c)    The homeowners policy is an "all risk" Policy, under which all risks of accidental direct physical loss to the insured properties are covered unless specifically excluded by the terms of the Policy;

(d)    The lead-in sentence relied upon by State Farm as being an "anti-concurrent causation" clause only applies to any damage which would not have occurred in the absence of the excluded event;

(e)    In order to deny coverage for the Robohms' Hurricane Katrina claim under the pertinent policy exclusion at issue, State Farm has the burden to prove that the loss would not have occurred in the absence of the excluded event;

(f)     State Farm has not met its burden of proof, and the loss and damage is covered under the homeowners Policy; and

(g)     The Robohms are entitled to an award of damages for the full value of all coverages available to them under the Policy, and such other and further relief as this Court may deem just and property, and the Robohms are entitled to receive a trial by jury on all issues so triable.

## **BREACH OF CONTRACT**

40.     The losses Plaintiffs sustained as a result of Hurricane Katrina were accidental direct physical losses for which coverage is provided in the State Farm Fire policy of insurance under Mississippi law.

41.     As provided by the law in the State of Mississippi, once the Plaintiffs provided to State Farm Fire evidence of the accidental physical loss, it became State Farm Fire's burden to prove what part, if any, of the loss was excluded under the terms of the all-risk policy.

42.     State Farm has not and cannot sustain its burden of proof because the Plaintiffs' loss was caused by wind, at least in part; and because State Farm abandoned and breached its duty to conduct a timely, thorough and competent inspection of the Plaintiff's losses.  Moreover, State Farm concluded neighboring homes sustained wind loss. State Farm ignored evidence of Hurricane Katrina's straight-line winds, tornados, severe thunderstorm cells, and air-borne missiles in the neighborhood and vicinity of Plaintiffs' home.

1. 43.     By issuing the subject policy to the Plaintiffs', and accepting premium payments thereon, State Farm Fire contractually agreed to pay for losses covered by the policy under Mississippi law. State Farm Fire, working in concert with and/or at the direction of State Farm Mutual, refused and continues to refuse to pay this legitimate claim, and thus breached its contract of insurance with the Plaintiffs. State Farm is liable to the Plaintiffs for breach of contract, and owes the Plaintiffs damages under the terms of the contract of insurance and Mississippi law, together with interest.

## POLICY REFORMATION

44.    This is an action for reformation of the State Farm-issued "all risk" Policy issued by the Defendant, State Farm, to the Plaintiffs, Donald and Natalie Robohm, when insuring the properties that is the subject of this litigation.

45.    The Robohms' position in this matter is that the Policy do and should provide coverage for their Hurricane Katrina damage, as the efficient proximate cause of that damage was windstorm and wind-related.

46.    However, should this Court determine that coverage is precluded for this loss by the language of the Policy, even though the efficient proximate cause was windstorm, since the ultimate result was some damage due to an alleged excluded event, tidal storm surge, then the Robohms seek a reformation of the contracts of insurance.

47.    The intent of the Plaintiffs when they entered into this contract was to obtain the best and most comprehensive coverage available, including obtaining coverage for the express situation that occurred when their homes sustained substantial and devastating Hurricane Katrina-related damage due to wind and water, where the efficient proximate cause of the loss was the windstorm.  The Plaintiffs reasonably believed that they were obtaining coverages for this type of an occurrence when they purchased the homeowners and rental Policy from State Farm's agent and the Robohms clearly indicated their intent and beliefs to State Farm's agent.

48.    If there is no coverage for their loss, then the lack of coverage is due to unilateral and/or for mutual mistake on the part of the insured, Donald and Natalie Robohm, and the insurer, State Farm (acting by and through its agent, Mike Meyers) along with inequitable and improper conduct by the insurer, State Farm, acting by and through its agents and employees, who allowed this mistake to exist and manifest itself at the time Hurricane Katrina struck the Mississippi Gulf Coast when the Robohms most needed the "broad" and "comprehensive" coverages promised by State Farm and its agent.  Particularly, this reasonable mistake on the

12

part of the Robohms, as well as the inequitable and improper conduct of State Farm, is evidenced, in part, by the statement contained on the face of the homeowners coverage form wherein it states: "This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars."

49.     In fact, State Farm used its superior bargaining position and power over its insured so as to mislead and induce its insured into believing that they would receive coverage for the exact circumstances which occurred in this case. Then, once the insured was at his most vulnerable, State Farm refused to provide coverage for any of the damage to the insured property, relying upon the particular exclusionary clause discussed above, which had never before been explained to the Robohms or even brought to their attention.

50.     Ultimately, should this Court find that there is no coverage under the homeowners and rental Policy for the Robohms' Hurricane Katrina loss, the Policy should be reformed to reflect the intent and mutual and/or unilateral mistake of the Robohms and State Farm's agent in conjunction with the inequitable conduct of State Farm, and this Court should require the Policy to provide coverage for all damages and losses sustained by the Robohms to the full extent of the limits of coverage afforded by the Policy.

## **WAIVER AND ESTOPPEL**

51.     State Farm Fire had the obligation to present the Plaintiffs with a copy of any exclusions from coverage it intended to be applicable to the subject policy of insurance. State Farm failed to deliver the Plaintiffs a copy of the subject policy of insurance until after Hurricane Katrina destroyed the Plaintiffs' home and property, and failed to provide the Plaintiffs with a copy of, or express notice of, any exclusions to the coverage listed on the declarations page which showed coverage available to the Plaintiffs. By failing to provide Plaintiffs with a copy of the subject policy of insurance, or of any purported exclusions to coverage, including but not limited to the exclusions relied upon by State Farm to deny the Plaintiffs' claims, State Farm voluntarily

waived its right to rely on said exclusion(s) to deny coverage for the total destruction of Plaintiffs' home and property by Hurricane Katrina. Defendants should be estopped from presenting or relying on any exclusionary provisions not provided to the Plaintiffs to deny their claim.

52.     Additionally, and in the alternative, Defendants had a duty, in the event it did not waive the right to assert exclusions to coverage, to establish what, if any, part of the loss fell under the terms of its exclusion.

53.     Ultimately, State Farm denied the Plaintiffs' claim not because it determined Plaintiffs' home and property were completely destroyed by an allegedly excluded peril, but because State Farm determined it could not find discernable wind damage, as part of a claims process adopted by State Farm after Hurricane Katrina, which process is totally contrary to the terms and conditions of the subject policy of insurance.

54.     State Farm Fire's action in canceling its adjusters' requests for engineers, in requiring evidence of discernable wind damage as a prerequisite to paying claims in total destruction cases, and issuing full denials in the Plaintiffs' case and similar slab cases, constitutes a waiver of State Farm's right to litigate whether portions of the loss are excluded on a case-by-case basis. By essentially declaring its burden of proof irrelevant and intentionally abandoning its obligation to establish what, if any, part of the loss was excluded; State Farm Fire waived its right to exclude any part of the loss.

55.     State Farm Fire induced the Plaintiffs to rely on its good faith handling of their claim when it assured them that its handling and payment of their NFIP flood claim would not prejudice Plaintiffs' right to receive payment under their homeowner's policy. At the time of said assurance, State Farm Fire had already adopted, at the direction of State Farm Mutual, its undisclosed and unsupported wind/water procedures by which coverage under the Homeowners' Policy was to be denied in the Plaintiffs' situation. Defendants fraudulently concealed said fact and fraudulently induced the Plaintiffs to act to the detriment of their substantial homeowner's

14

claim by accepting payment under the flood policy prior to, instead of simultaneously with, the homeowners' claim. Defendants should be estopped from denying that they owe full coverage under the Homeowners Policy to the Plaintiffs and all State Farm insureds similarly situated.

## NEGLIGENCE / GROSS NEGLIGENCE / FAILURE TO INVESTIGATE

56.    State Farm Fire had a duty under the subject policy of insurance to fully investigate the claims of its insureds arising from Hurricane Katrina, including but not limited to the claims of the Plaintiffs, and to pay the Plaintiffs for covered losses. State Farm Fire's duties under the subject policy of insurance included, but were not limited to the duty to:

a.  Train adjusters, engineers and other claims personnel to accurately investigate and determine the causation of losses suffered by State Farm Fire's insureds, and to correctly apply the subject policy of insurance to the facts of particular losses, including the Plaintiffs', or hire competent, qualified professionals to perform its investigation;

b.  Have competent adjusters, engineers, or other qualified professionals perform a detailed inspection of the Plaintiffs' damages and losses, in a timely and professional manner;

c.  Complete its investigation, and pay the Plaintiffs for their covered losses, within a reasonable amount of time;

d.  Pay the Plaintiffs for all losses and damages covered under the insurance policy;

e.  Resolve any and all ambiguities in the subject policy of insurance in favor of coverage for State Farm Fire's insureds, including the Plaintiffs;

f.  Prove facts supporting, and the applicability of, any exclusion to coverage before excluding coverage for the Plaintiffs' losses caused by Hurricane Katrina;

g.  Pay claims in accordance with the terms and conditions of the subject policy of insurance, and Mississippi law;

h.  Treat all insureds in a consistent and equal manner;

i.  Pay the Plaintiffs claims in conformance with the findings of the adjusters who actually

performed inspection(s) of the Plaintiffs' property as part of the claims process;

j.  The duty, implicit within every policy of insurance in the State of Mississippi, to treat the Plaintiffs with good faith and fair dealing; and

k.  Other duties to be shown at the trial of this matter.

57.    Defendants negligently, grossly negligently, maliciously, and/or with reckless disregard for the rights of the Plaintiffs, breached each of the duties outlined above.

### NEGLIGENCE / GROSS NEGLIGENCE / FAILURE TO INVESTIGATE ADIING AND ABETTING

58.    State Farm Mutual knew that decisions made by it as a result of consulting and claims services performed on behalf of State Farm Fire would impact the rights of Plaintiffs and other State Farm Fire policyholders.  State Farm Mutual knew about, and participated in the claims conduct of State Farm Fire, and that said conduct constituted a breach of the duties owed to Plaintiffs.  State Farm Mutual gave substantial assistance and encouragement to State Farm Fire in the claims processes that led to the denial of Plaintiffs' claims, and the claims of hundreds of other similarly situated insureds.

59.    State Farm Mutual's actions caused and contributed to the damages to Plaintiffs, as set forth throughout this Complaint.

### TORTIOUS, BAD FAITH, AND CONTINUING BREACH OF CONTRACT

60.    The actions of State Farm in denying the Plaintiffs' claims were part of a fraudulent and deceptive scheme deliberately devised and intentionally implemented by Defendants after Hurricane Katrina, at the expense of the Plaintiffs and similarly situated insureds. Said actions constitute intentional, wrongful, and tortious acts.

61.    Defendants intentionally embarked on a corporate course of conduct of fraud and deceit designed to wrongfully deny the Plaintiffs, and other similarly situated policyholders, from receiving the benefits to which they were entitled under State Farm Fire's homeowners' policy(s). The actions of Defendants were intentional wrongs, and/or were committed with reckless

16

disregard for the rights of the Plaintiffs; and rise to the level of independent torts. Defendants' conduct constitutes the tort of "bad faith", or tortious breach of contract, under Mississippi law.

62.    Defendants' own investigation mandated coverage for the Plaintiffs' claims, as the Plaintiffs undisputedly suffered an "accidental direct physical loss", and the only person who performed a physical inspection of the loss on behalf of the Defendants concluded he could not determine the cause of loss – or whether the loss was caused by an excluded peril. Additionally, and the alternative, a proper investigation of the Plaintiffs' claim by State Farm and its agents and representatives would have adduced evidence showing that the denial of the claim was without merit. State Farm Fire, on the instruction of and/or with the assistance of State Farm Mutual, intentionally and deliberately ignored the findings of its adjuster, abandoned its duty to conduct a thorough investigation, and adopted a new and improper standard for handling slab claims not contained in the policy, in violation of Defendants' obligation to conduct a good faith investigation before a final denial of coverage and liability.

63.    Defendants negligently, grossly negligently, intentionally, maliciously, and/or with reckless disregard for the rights of the Plaintiffs, sought to interpret State Farm's own policy of insurance contrary to the actual terms and conditions thereof; contrary to State Farm Fire's express and/or implicit representations that coverage would be provided for losses caused by hurricanes in exchange for additional consideration; and contrary to Mississippi public policy, all to the benefit of State Farm and to the detriment of the Plaintiffs and similarly situated insureds. State Farm Fire, on instruction from an/or with the assistance of State Farm Mutual, denied coverage for losses caused by Hurricane Katrina based on alleged damage caused by hurricane driven "storm surge", with no proof that damage was caused independently by storm surge, without performing an investigation to prove what, if any damage was caused by "storm surge", and while ignoring evidence of wind damage.

64.    Moreover, Defendants denied coverage for damage alleged caused by "storm surge"

when the subject policy of insurance did not include the separate and distinct peril of "storm surge" as a peril it intended to attempt to exclude, even though the industry, and other companies doing business in Mississippi, recognized that "storm surge" is an independent peril which must be specifically named to be excluded. Recognizing that hurricane driven storm surge may have contacted the Plaintiff's property, and that "storm surge" was not excluded in the subject policy of insurance, State Farm sought to re-name the separate and direct peril of "storm surge", and State Farm claimed damage was caused by "flood, surface water, waves and tidal water".

65.    Additionally, Defendants denied coverage for losses caused by a hurricane based upon the policy's "anti-concurrent" clause, at a time when State Farm Fire had no proof that the Plaintiffs' losses "would not have happened in the absence of" an allegedly excluded loss, and continues to deny the Plaintiffs' claims even after a Court of competent jurisdiction ruled State Farm Fire's anti-concurrent clause is ambiguous.

66.    Defendants, by and through their agents and employees, refused to pay for the Plaintiffs' covered losses caused by Hurricane Katrina without a legitimate, arguable, or reasonable basis. Defendants' breach of their duties under the subject policy of insurance, and other acts and omissions of Defendants addressed throughout this Complaint, constitute a bad faith breach of Defendants' duties and obligations to the Plaintiff under the subject policy of insurance, as well as a bad faith breach of Defendants' implicit duty to treat their policyholders with good faith and fair dealing. Defendants' bad faith conduct is continuing, as State Farm continues to deny coverage to the Plaintiffs despite Court findings that its "anti-concurrent" clause is ambiguous, and despite the fact it never obtained evidence to support its denial of the Plaintiffs' claim for losses caused by the accidental direct physical loss that was Hurricane Katrina.

67.     The actions of State Farm Mutual and State Farm Fire as alleged above constitute a violation of the implied covenant of good faith and fair dealing implicit in every contract of insurance, and bad faith breach of contract; and include post-litigation violations of its duties of good faith.

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

68.     State Farm Mutual knew State Farm Fire had contracts of insurance with Plaintiffs and other Mississippi Gulf Coast residents.

69.     State Farm Mutual willingly and intentionally interfered with Plaintiffs' contract with State Farm Fire by requiring State Farm Fire to use the wind/water protocol written by State Farm Mutual, and to implement the false requirement of "discernable wind damage" before coverage would be afforded in claims for totally destroyed homes, in violation of the terms and conditions of the subject contract.

70.     State Farm Mutual's interference with the subject contract caused or contributed to the Plaintiffs' damages.

## FRAUDULENT CLAIMS PRACTICES

71.     The massive number of State Farm insured homes destroyed *to the foundation* by Hurricane Katrina left State Farm Fire facing huge losses after Hurricane Katrina. State Farm Mutual and State Farm Fire made an initial assessment of the magnitude of the loss. Defendants then conceived and instituted a fraudulent course of claims practices to be applied to Katrina "slab claims", including that of the Plaintiffs.

72.     The claim of the Plaintiffs, and the claims of hundreds of other State Farm insureds whose homes were rendered mere "slabs" by Hurricane Katrina, were wrongfully denied pursuant to State Farm's Katrina –specific "top down" scheme of fraudulent and deceptive claims practices.

73.     State Farm Fire, acting with State Farm Mutual, in effect re-wrote its contract and its claims procedures for total destruction cases where the property was contacted by storm

surge during the Hurricane, and embarked on an intentional course of pre-litigation and post-litigation conduct, fraudulently concealed from Plaintiffs and others, deliberately designed to deny legitimate claims covered under the State Farm contract and Mississippi law.

74.    The actions of State Farm Fire constitute a deliberate course of company-wide fraudulent post-Katrina claims handling practices by which State Farm Fire and State Farm Mutual intentionally undertook to defraud the Plaintiffs and other State Farm Fire insured homeowners, as well as others.

75.    The scheme included post-Katrina modification of State Farm's coverage provisions, and employment by State Farm Mutual and State Farm Fire of improper or absent engineering procedures, which were fraudulently concealed from the Plaintiffs and other homeowners who were expecting and relying on good faith handling of their claims by Defendants.

76.    Said actions by Defendants constitute fraud, fraudulent concealment, and fraudulent inducement, as well as bad faith claims handling on an institutional basis in the handling by State Farm Mutual and State Farm Fire of Katrina "slab claims." The actions by Defendants were intended to, and did, result in the intentional and fraudulent denial of the claims of the Plaintiffs and others whose homes were completely destroyed by Hurricane Katrina.

77.    State Farm Mutual aided and abetted State Farm Fire's fraud by (a) ordering or inducing State Farm Fire's conduct knowing of the conditions under which State Farm Fire's conduct was done and/or intending the consequences of said conduct, or (b) knowing that State Farm Fire's conduct constituted tortious a breach of duty and giving substantial assistance or encouragement to State Farm Fire, or (c) giving substantial assistance to State Farm Fire in accomplishing a tortious result, and State Farm Mutual's conduct, separately considered, constitutes a breach of duty to Plaintiffs.

78.    State Farm Mutual's aiding and abetting of the fraudulent claims scheme alleged herein caused or contributed to the damages of the Plaintiffs.

## **FRAUD, FRAUDULENT INDUCEMENT**

79.    Defendants induced the Plaintiffs, and other insureds in the coastal counties of Mississippi, to purchase homeowners insurance from State Farm Fire; to agree to a higher deductible and/or higher premiums; to pay premiums to State Farm Fire; and to not seek to place their insurance business with other insurance companies; based upon the express and implicit representations that the Plaintiffs, and other insureds in Mississippi, were purchasing coverage for losses caused by hurricanes. At the time that State Farm Fire sold the subject policy of insurance to the Plaintiffs, accepted premiums for said policy, and required the Plaintiffs to pay higher premiums for hurricane coverage or accept a higher deductible for hurricane coverage, State Farm Fire (1) made express and implied representations that the Plaintiffs were purchasing coverage for hurricanes, (2) made express and implied representations that it would use competent professionals to investigate and adjust hurricane claims in an unbiased and fair manner, (3) made express and implied representations that it would adjust and pay the Plaintiffs claims in a fair and timely manner, and in a manner consistent with the way all other hurricane claims in Mississippi were handled, and (4) made express and implied representations that State Farm Fire would not deny coverage for an accidental physical loss in absence of reasonable proof that the loss was caused by an excluded loss, set forth in an exclusion delivered to the Plaintiffs. State Farm Fire made these implied and/or express representations to the Plaintiffs with the intention that the Plaintiffs would rely upon the representations, would pay premiums to State Farm Fire, and would not purchase coverage from other insurance carriers to secure coverage for their property against potential hurricane losses. The Plaintiffs relied on State Farm Fire's express and/or implied representations, and the Plaintiffs purchased the subject insurance policy from State Farm Fire instead of placing their insurance with another carrier, and paid premiums thereon, in reliance on those representations.

80.     State Farm Fire's representations to the Plaintiffs, set out in the preceding paragraph, were false, and Defendants either knew they were false, and recklessly misrepresented the true facts by not making any effort to ensure that the representations would be complied with in the event of a catastrophic hurricane such as Katrina.  Defendants' acts and omissions, as set forth in all the preceding paragraphs, were contrary to the representations on which the Plaintiffs relied in purchasing the policy and to the benefit and financial gain of Defendants, which still has not paid the Plaintiffs' legitimate claim, and to the detriment of the Plaintiffs.

81.     As a direct and proximate result of State Farm Fire's fraudulent misrepresentations, and Plaintiffs' reliance thereon, Plaintiffs were prevented from purchasing insurance from other insurance company(s) to cover losses in the event of a catastrophic hurricane, and have not been compensated for their losses.

## **BAD FAITH**

82.     This is an action for insurer bad faith against State Farm for its breach of the covenant of good faith and fair dealing, seeking compensatory damages, punitive damages, and attorney's fees.

83.     This action arises from the Hurricane Katrina loss sustained by the insureds, Donald and Natalie Robohm, against their insurer, State Farm, for its egregious misconduct in adjusting and investigating its insureds' loss.

84.     Mississippi law requires a duly admitted insurance carrier, such as State Farm, to treat its insureds with honesty, fairness, and with due regard for the interests of the insureds. The special relationship between an insurer and its insured requires the insurer to act toward the insured with the utmost of good faith and fair dealing when the insured is at his or her most vulnerable.  State Farm breached these duties in the handling of the Robohms' claim in order to ensure its own financial gain and profit.

85.    State Farm is engaged in the business of insurance, and is subject to Mississippi statutes, Mississippi regulations, and Mississippi law while involved and engaged in the business of insurance.  In the State of Mississippi, an insurance carrier owes the implied duty of good faith and fair dealing to treat its insured fairly, reasonably, and honestly, and with due regard for the insured's interest.  State Farm has been guilty of failing and/or refusing in good faith to settle the subject claim when, under all circumstances, it could and should have done so had it acted fairly and honestly toward its insured.

86.    When State Farm issued the Policy to the Robohms, it promised to provide the best and most comprehensive coverage available, including coverage for any loss where the efficient proximate cause of the loss was a windstorm such as Hurricane Katrina.  In spite of these promises, when faced with its insured's devastating loss in the aftermath of Hurricane Katrina, State Farm attempted to avoid its coverage obligations and instead adopted a position completely contrary to Mississippi law on the subject, and contrary to all promises and assurances previously given by the Robohms' agent, State Farm tortuously breached its claims handling duties by seeking any way to disavow coverage, especially when coverage was afforded by the Policy, and by Mississippi law.

87.    Moreover, as can be seen from the correspondence attached, State Farm only conducted a very cursory review of the insured's property after the storm, and did not conduct a complete and proper evaluation of the damage or the cause of the damage.  This is also true despite the fact that State Farm has routinely utilized engineers to evaluate similar losses.

88.    Significantly, the Mississippi Department of Insurance issued Bulletin 2005-6 on September 7, 2005, specifically addressing situations where little or nothing remains of the insured structure following Hurricane Katrina damage.  The Bulletin specifically requires:

> In those situations, the insurance company must be able to clearly demonstrate the cause of the loss.  I expect and believe that when there is any doubt, that doubt will be resolved in favor of finding coverage on behalf of the insured.  In instances where the insurance company believes the damage was caused by water, I expect the

insurance company to be able to prove to this office and insured that the damage was caused by water and not by wind.

This Bulletin, authored by the Commissioner of Insurance, George Dale, was completely disregarded and ignored by State Farm in the adjustment of the Robohms' loss.

89.    Rather than carrying out its contractual, statutory, regulatory and ethical duties, State Farm has committed acts during the adjustment of the Robohms' claim that were not in good faith, and were so egregious as to constitute intentional and willful conduct, or gross negligence or reckless disregard for the rights of its insured.

90.    Upon information and belief, State Farm implemented claims programs for the adjustment of Hurricane Katrina claims that are/were secret and unknown practices that were designed to pressure its adjusters/investigators/employees to pay less than the fair value of the claim, to be free from regulatory and judicial review, and to create an unfair advantage over its competitors, and its insureds.

91.    Upon information and belief, as a general business practice, State Farm has adopted this practice throughout the State of Mississippi as a way to reduce its exposure in the face of catastrophic losses, even though the duty to accept coverage and pay policy benefits must be afforded under the circumstances.

92.    State Farm has pursued this course of conduct willfully and maliciously, or with gross negligence or in reckless disregard for the rights of its insureds, including the Robohms. State Farm's motivation for attempting to disavow coverage arises from its attempts to preserve profits rather than any attempts to treat its insureds fairly and honestly.

93.    Upon information and belief, State Farm has financially benefited from this unfair claims handling practice, and State Farm should be forced to disgorge all unlawful or illegitimate profits and monies from such bad faith claims handling practices.

## DAMAGES

94.    As the proximate result of the aforesaid wrongful conduct of Defendants, set forth

in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs suffered actual damages in the amount of the full contract damages under the subject policy of homeowner's insurance, as well as other benefits that were due under the terms of the insurance policy. As a further proximate result of Defendants' breach of their duties under the subject policy of insurance; pattern and practice of deceptive conduct; and the other acts and omissions of Defendants, as described in all of the preceding paragraphs, the Plaintiffs have suffered the damages discussed throughout this Complaint, including but not limited to loss of insurance premiums, severe mental and emotional distress, anxiety, worry, personal financial expenses, and other incidental damages all to the Plaintiffs' general damage, all of which were foreseeable to Defendants at the time of, and in the event of the acts and omissions discussed in the preceding paragraphs.

95.      As the proximate result of the aforesaid wrongful conduct of Defendants, set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs were forced to hire attorneys, and incur substantial time and expense in pursuing this civil action to compel Defendants to pay the benefits due to the Plaintiffs under the policy. Delay in payment of claims is an integral, and for Defendants profitable, part of the scheme of fraudulent, tortious, and bad faith claims practices giving rise to this suit. Said delay, intended by Defendants, has exacerbated the extra-contractual damages suffered and incurred by the Plaintiffs, for all of which damages should be awarded in this action.

96.      Some or all of the acts and omissions of Defendants described in all of the preceding paragraphs, which are fully incorporated herein, were grossly negligent; and/or were attended by circumstances of misrepresentations or concealment of material facts; malice; willful and wanton conduct; and/or were committed with gross, reckless, and /or callous disregard for the rights of the Plaintiffs. As such, the Plaintiffs are entitled to an award of punitive damages from and against State Farm, in an amount sufficient to punish Defendants for their

wrongdoings, and to deter Defendants, and others similarly situated; from committing similar outrageous acts in the future.

97.     The acts and omissions of Defendants further justify the imposition of consequential damages and attorneys' fees, in addition to punitive damages.

WHEREFORE PREMISES CONSIDERED, the Plaintiffs demands judgment from and against the Defendants, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and John Does One through fifteen, and each of them, for actual and compensatory damages in the amount of all contract damages available under the policy of insurance, and for extra-contractual damages in an amount sufficient to compensate Plaintiffs for their anxiety, worry, mental and emotional distress, lost time, personal expenses and other incidental and consequential damages they have suffered as a result of Defendants' conduct, plus consequential damages as a result of Defendants' conduct, including reasonable attorneys' fees and expenses for having to hire attorneys to prosecute this claim, plus pre-judgment interest and post-judgment interest in the amount allowed by law, but not less that 8% per annum.

Plaintiffs further pray for punitive damages to be assessed against the Defendants, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and John and Jane Does A-H, and each of them, in an amount sufficient to punish Defendants for their wrongful conduct, and to deter like conduct in the future, and to serve as an example and a warning to others, so as to deter Defendants and other insurance companies from engaging in a similar course of conduct in the future.  Plaintiffs further pray for any and all additional relief, in favor of the Plaintiffs, deemed appropriate by this Honorable Court.

RESPECTFULLY SUBMITTED this, the ___ day of August, 2008.

DONALD ROBOHM and NATALIE ROBOHM,
Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____
STEPHEN W. MULLINS

STEPHEN W. MULLINS (MS Bar #9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102  (39564)
P. O. Box 990
Ocean Springs, MS   39566-0724
(228)875-3175 - Telephone
(228)872-4719 - Facsimile