IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DONALD ROBOHM and
NATALIE ROBOHM,

**PLAINTIFFS**

**VERSUS**              **CIVIL ACTION NO.: 1:08CV490-LTS-RHW**

STATE FARM FIRE & CASUALTY COMPANY; STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
and STATE FARM JOHN DOES, One through Fifteen        **DEFENDANTS**

---

**PLAINTIFFS' RESPONSE AND INCORPORATED
MEMORANDUM OF LAW TO DEFENDANT STATE FARM FIRE AND
CASUALTY CO.'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

---

TABLE OF CONTENTS

Facts ………………………………………………………    1 – 3

Burden of Proof……………………………………………    3 – 6

Argument: Breach of Contract, As to Loss of Use…………..    6 – 9

Argument: Breach of Contract, As to Collapse……………..    9 – 10

Argument: Anti-Concurrent Causation………………………    11 – 12

Argument: Extra-Contractual or Punitive Damages…………    12 – 15

     Bad Faith Failure to Investigate ……………………    13
     Facts Demonstrating Bad Faith Failure to Investigate    14
     State Farm's Burden…………………………………    15

Argument: Bad Faith Denial of Insurance Claim (punitive)…    15 – 21

     Lack of an Arguable Basis to Deny…………………..    16
     Determination of Bad Faith…………………………..    18
     Showing of Actual Malice or Gross Negligence……..    20

Argument: Misrepresentation and Reformation………………    21 – 23

Argument: Negligence………………………………………...    24 – 25

Declaratory Judgment……………………………………….    25

Argument: Waiver and Estoppel……………………………….    25 - 27

Conclusion ……………………………………………….    27

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DONALD ROBOHM and
NATALIE ROBOHM,**

**PLAINTIFFS**

**VERSUS**                      **CIVIL ACTION NO.: 1:08CV490-LTS-RHW**

**STATE FARM FIRE & CASUALTY COMPANY; STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
and STATE FARM JOHN DOES, One through Fifteen**          **DEFENDANTS**

---

**PLAINTIFFS' RESPONSE AND INCORPORATED
MEMORANDUM OF LAW TO DEFENDANT STATE FARM FIRE AND
CASUALTY CO.'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

---

COME NOW the Plaintiffs, DONALD AND NATALIE ROBOHM ("The Robohms"), by and through their undersigned attorneys, and hereby file this, their Response and incorporated Memorandum of Law to Defendant, STATE FARM FIRE AND CASUALTY COMPANY's, (hereinafter referred to as STATE FARM), Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, and state the following to-wit:

**FACTS**

On August 29, 2005, the effects of Hurricane Katrina destroyed the Plaintiffs' residence and personal property located in Ocean Springs, Mississippi. The Plaintiffs timely submitted their claim to State Farm Fire & Casualty Company for the loss of

their home to the extent that coverage was available under their homeowner's policy and for loss of use.

State Farm they failed to properly adjust the damages and denied payment of the additional living expense related claim. The policy of insurance endorsement that Plaintiffs believe triggered coverage of all additional living expenses reads as follows:

---

Windstorm or Hail Exclusion Endorsement

We do not cover loss resulting directly or indirectly from windstorm or hail. We will cover direct loss by fire or explosion resulting from windstorm or hail.

This exclusion does not apply to COVERAGE C – LOSS OF USE.

---

Without proper investigation the Plaintiffs' claim was denied on November 11, 2005. The Plaintiffs claim that State Farm's decision to deny the claim was arbitrary for several reasons. The first reason is that Bruce Meeker, the adjuster that visited the site, conferred with his State Farm manager and they agreed that an engineering report would be necessary to determine whether any coverage would be triggered by the damages. The Plaintiffs agreed, relied on State Farm and further even obtained their own engineering report simultaneous to State Farm obtaining such a report. Secondly, State Farm hired The Structures Group, Inc. to evaluate the site; however, cancelled the evaluation and summarily denied the claim on November 11, 2005 citing that their investigation was 'complete' and relying on the anti-concurrent causation clause of the policy.

2

Since that time, State Farm, through pleadings, changed the reasoning for their denial and now claim that the Plaintiffs are not owed monies from the Loss of Use coverage because they received flood coverage in the sum of $250,000 which sum of damage rendered the home uninhabitable relinquishing them of any money owed to the Plaintiffs. State Farm further indicates that they are entitled to a pro-rata offset for wind damages vs. flood damages even though the policy of insurance simply states that wind is a trigger for Loss of Use coverage. They further claim that the wind damages were nominal despite the fact that the Plaintiffs' wind policy covered the wind damages of $500,000, twice the flood payment.

The Plaintiffs were rendered a home that was uninhabitable and they incurred considerable cost, inconvenience and emotional distress as State Farm arbitrarily denied their claim. Natalie Robohm suffered severe emotional distress and incurred medical costs due to State Farm's breach of contract, negligence and disregard.

The Plaintiffs attempted, on many occasions, to obtain the coverage they paid to own to no avail and this lawsuit commenced on August 28, 2008.

## BURDEN OF PROOF

The Defendant, as movant, bears a large and significant burden. Under M.R.C.P., Rule 56, summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The initial burden is on the moving party to identify those portions of the record that demonstrate that there is no evidence to support the non-movant's case and that, as a matter of law, the moving party must prevail. *Celotex Corp.*, 477 U.S.at 323, 325 (1986). The movant also has the burden of persuasion. This burden is a stringent one which always remains with the moving party. *Id* at 477 U.S. 317, 330-33; *Adickes*, 398 U.S. at 157-61.

As is discussed by the Fifth Circuit Court of Appeals in *J. M. Blythe Motor Lines Corp. v. Blalock*, 5 Cir. 1962, 310 F.2d 77 '... a motion for summary judgment, should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law'. Our Mississippi Court recognizes this position in *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss. 1983) when it provides 'the Court cannot try issues of fact on a Rule 56 motion; it may only determine if there are issues to be tried'.

Disputes over facts that might affect the outcome of the case under the governing law will preclude the entry of summary judgment. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "[T]he material fact required by Rule 56 to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968). Ultimately, a motion for summary judgment should not be granted "unless the entire record shows a right to judgment with such clarity as to leave

4

no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Gibson v. Henderson*, 129 F.Supp.2d 890, 897 (M.D.N.C. 2001).

Applying this standard, there is a genuine factual dispute as to the cause of the loss, whether State Farm properly inspected the loss, and whether State Farm had a reasonable basis to deny the loss.

While it may be true that Plaintiffs would have a clear and convincing burden of proof on the issue of punitive damages *at trial*, such burden does not exist at the summary judgment stage of litigation. At this point, Plaintiffs must merely demonstrate that they have advanced enough circumstantial evidence to take [their] claims "out of the realm of mere conjecture and plant them in the solid ground of reasonable inference" to overcome a motion for summary judgment. *Thomas*, 233 F.3d at 330 (internal quotations omitted).

Under the Plaintiffs' bad faith failure to investigate claim, they simply must show that sufficient genuine issues of material fact exist to show that State Farm's acts and omissions went further than mere negligence and amounted to gross negligence and/or an intentional tort. *Lewis v. Equity National Life Ins. Co.*, 637 So.2d 183 (Miss. 1994). And as Judge Senter has directed regarding the court's analysis of a Fed.R.Civ.P Rule 56 Motion relating to punitive and extra-contractual awards: "it is not for the Court to weigh the evidence or evaluate the credibility of witnesses, but must consider the evidence submitted by the parties in support of and in opposition to the motion and grant all reasonable inferences to the non-moving party...[T]hat evidence and those inferences drawn from it are viewed in the light most favorable to the non-moving party." *Payment*

*v. State Farm Fire and Casualty Company*, 2008 WL 5003077 (S.D. Miss. November 2008).

As will be more thoroughly demonstrated in the following sections, Plaintiffs would respectfully submit that sufficient evidence exists to enable a jury to find that State Farm's acts and omissions in failing to adequately investigate Plaintiffs' claims amounted to an intentional tort and constitutes gross negligence and bad faith warranting punitive damages. Furthermore, sufficient evidence exists to enable a jury to find that State Farm denied the Plaintiffs' claim in bad faith- lacking an arguable basis for denying the claim and their denial was grossly negligent in disregard of the insured's rights- the requirements for bad faith denial of an insurance claim set forth in *U.S. Fid. & Guar. Co. v. Winnginton*, 964 F.2d 487, 492 (5th Cir. 1992).

## ARGUMENTS

### I.  BREACH OF CONTRACT
As to Loss of Use, Additional Living Expenses

1.    State Farm claims they are entitled to summary judgment on the breach of contract issued because the Plaintiffs' home sustained $250,000 in flood damage and that damage was sufficient to render their house uninhabitable. Further, State Farm indicates that the Plaintiffs cannot show that the home was rendered uninhabitable by wind that would trigger the policy provision of Loss of Use.

2.    State Farm relies on the fact that the Plaintiffs obtained flood policy proceeds of $250,000 on the structure indicating that the home was rendered uninhabitable by water. However, State Farm is ignoring the fact that the Plaintiffs received twice that sum, or $500,000 from coverage of a wind policy. It does not make sense that State Farm argues that wind damage was minimal.

3.      The facts that are important to this cause of action are set forth in this and
the following paragraphs. The Plaintiffs purchased a homeowner's policy of insurance,
Form FP7955, effective from April 18, 2005 through April 18, 2006 from State Farm.
This policy was further governed by a Windstorm Hail Exclusion endorsement, Form FE-
7512.

The endorsement states as follows:

> 'We do not cover loss resulting directly or indirectly from windstorm or hail.
> We will cover direct loss by fire or explosion resulting from windstorm or
> hail.'
> This exclusion does not apply to COVERAGE C – LOSS OF USE.

A copy of the policy Declarations Page and Windstorm Endorsement is attached
hereto as Exhibit 'A'.

4.      The effects of Hurricane Katrina rendered the residence uninhabitable as is
established by the photographs attached hereto as Exhibit 'B'.

5.      The policy of insurance provides additional living expenses for the
Plaintiffs when their home becomes uninhabitable by a loss insured. The policy
specifically provides as follows:

> COVERAGE C – LOSS OF USE
>
> Additional Living Expense. When a Loss Insured caused the residence
> premises to become uninhabitable, we will cover the necessary increase in
> cost you incur to maintain your standard of living for up to 24 months. Out
> payment is limited to incurred costs for the shortest of: (a) the time
> required to repair or replace the premises; (b) the time required for your
> household to settle elsewhere; or (c) 24 months. This coverage is not
> reduced by the expiration of this policy.
>
> (See the COVERAGE C – LOSS OF USE portion of the policy attached
> hereto as Exhibit 'C')

7

While wind was not a covered loss for the structure, the provision in the Windstorm endorsement provides a trigger for Loss of Use **even in the case of wind damages**. This endorsement provision is critical because State Farm denied the claim for additional living expenses even though they had no expert opinion as to the cause of the damages. They even admit on November 11, 2005 that 'there was a question as to the extent of damage caused by wind'. The denial letter goes on to say 'our investigation is now complete and we have determined that all of the other damage not previously paid for was a result of flood, surface water, waves and/or tidal water. Damages resulting from these causes of loss are not covered by you policy.' (Even though no real investigation was ever done.) (See Denial Letter from State Farm to Plaintiffs dated November 11, 2005 attached hereto as Exhibit 'D')

6.    State Farm received an engineering report four (4) months after denying the Plaintiffs' claim for additional living expenses. However, the opinion of The Structures Group, Inc., engineers, acknowledge wind damages occurred to the residence at issue. (See report of The Structures Group, Inc., for State Farm, dated February 20, 2006 attached hereto as Exhibit 'E') In an almost identical fact issue in anoterh Katrina case, the Court stated therein:

> I need go no further in the claim file to see that a final decision to deny the plaintiffs' claim was made before the State Farm adjustor in charge of the file received the engineering report State Farm had requested...[T]he fact that it was made-while an engineering report had been requested and not yet received- is sufficient evidence to create a genuine issue of material fact on the questions of whether State Farm was acting with reasonable care and operating in good faith."

*Remel v. State Farm Fire and Casualty Company*, 2009 WL 482131 at *2

8

State Farm's own adjuster admitted there was a question of the extent of damage caused by wind.

Based upon: (1) the fact that State Farm denied Plaintiffs' claim before they even received their requested engineer's report; (2) the fact that the Defendant still has not tendered any payment to the Plaintiffs under the homeowners policy, inclusive of the endorsement, despite acknowledged wind damage by Defendant's own expert; and (3) State Farm's failure to follow its own internal policy- State Farm's Motion should be denied as this is clearly a factual matter to be determined by a Jury.

## BREACH OF CONTRACT
### As to Homeowner's Policy on Collapse

1.    State Farm claims they are entitled to summary judgment on the breach of contract issued because the Plaintiffs' home sustained $250,000 in flood damage and that damage was sufficient to render their house uninhabitable. Further, State Farm indicates that the Plaintiffs cannot show that the home was rendered uninhabitable by wind that would trigger the policy provision of Loss of Use.

2.    State Farm relies on the fact that the Plaintiffs obtained flood policy proceeds of $250,000 on the structure indicating that the home was rendered uninhabitable by water. However, State Farm is ignoring the fact that the Plaintiffs received twice that sum, or $500,000 from coverage of a wind policy. It does not make sense that State Farm argues that wind damage was minimal.

3.        The homeowner's policy of insurance, Form FP-7955, provides a provision to the Plaintiff in cases of collapse of any part of their residence. See the

portion of the policy regarding 'Collapse' attached hereto as Exhibit 'F'. That portion

states as follows:

> Collapse. We insure only for direct physical loss to covered property involving
> the sudden, entire collapse of a building or any part of a building.

> Section I – Additional Coverages (11)

4.      The adjuster for State Farm, Bruce Meeker, indicates throughout the State

Farm Activity Log, attached as Exhibit 'G' that 'collapse' was an issue of consideration.

Specifically, he is quoted in his entries as follows:

| 9-12-05 | ...Insured says people who stayed in the area said the wind came first as three trees are on his home and he believes they were there before the water came. |
| 9-20-05 | The first floor has coplasted (collapsed) into the crawl space, the Second floor is coplasting (collapsing) into the first floor on the SE corner, and the front section of the roof is coplasting (collapsing) into the second floor. |
| 9-22-05 | ...the roof is collapsing..... |

5.   State Farm did not investigate the cause of the collapses, nor did they

properly adjust the damages referenced by their own adjuster, Bruce Meeker. Denial of

any claims made the Plaintiffs was invoked on November 11, 2005 before receiving any

engineering report. The engineering report that was received by State Farm was received

on February 20, 2006, four (4) months after denying the Plaintiffs' claims.

Based upon the fact that State Farm denied Plaintiffs' claim before they even

received their requested engineer's report and their failure to adjust the collapse despite

the acknowledgement of collapse in their own Activity Log State Farm's Motion should

be denied as it is clearly a factual matter that should be decided by a Jury.

## BREACH OF CONTRACT
Anti Concurrent Causation

1.    The Plaintiffs received a letter indicating the denial of their claims on

November 11, 2005 basing the denial on the following language contained in the policy:

SECTION I – LOSSES NOT INSURED

2.    We do not insure under any coverage for any loss which would not have
occurred in the absence of one or more of the following excluded events.
We do not insure for such loss regardless of: (a) the cause of the excluded
event; or (b) other causes of the loss; or (c) whether other causes acted
concurrently or in any sequent with the excluded event to produce the loss;
or (d) whether the event occurs suddenly or gradually involves isolated or
widespread damage, arising from natural or external forces, or occurs as a
result of any combination of these:
   c.    Water Damage, meaning:
      i.    Flood, surface water, waves, tidal water, tsunami, seiche,
overflow of a body of water, or spray from any of these, all
whether driven by wind or not;
     ii.    Water or sewage from outside the residence premises plumbing
system that enters through sewers or drains, or water which
enters into and overflows from within a sump pump, sump
pump well or any other system designed to remove subsurface
water which is drained from the foundation area; or
   iii.    Water below the surface of the ground, including water which
exerts pressure on, or seeps or leaks through a building,
sidewalk, driveway, foundation, swimming pool or other
structure.
   However, we do insure for any direct loss by fire, explosion or

theft resulting from water damage, provided the resulting loss is

itself a Loss insured.

2.    In *Corban v. United Servs. Auo Ass'n*, 20 So.3d 601 (Miss 2009), the

Court finds that the ACC clause is inapplicable. The Court stated 'Only when facts in a

given case establish a truly "concurrent" cause, i.e. wind and flood simultaneously

converging and operating in conjunction to damage the property, would we find, under

Mississippi law, that there is an "indivisible" loss which would trigger application of the

11

ACC clause." State Farm's own engineer reports, in his Conclusion, that the damages were divisible and does so by sorting his, although contested by Plaintiffs, opinion that certain damages were caused by wind and others by water.

In the matter of *Charles Spansel and Janet Spansel vs. State Farm Fire and Casaulty Co.*, 2010 WL 89424 (S.D. Miss), USDC cause number 1:08cv1516-LG-RHW, January 6, 2010, the Court agrees with *Corban* and states "The anti-concurrent clause is cited in the previous section. State Farm argues that this clause has been held unambiguous and enforceable by the Fifth Circuit." However, the United States District Court for the Southern District found that "Since that time [the Fifth Circuit's ruling], the Mississippi Supreme Court has rejected this contention and held that the anti-concurrent clause was ambiguous and unenforceable to the extent that it purported to exclude any wind loss if it occurred separately from and in any sequence to excluded water loss."

Based upon the foregoing, the Defendant State Farm is not entitled to summary judgment on breach of contract or any other claims relating to their denial based upon anti-concurrent causation, and Plaintiffs are entitled to a verdict on their declaratory judgment at this point.

## II.    EXTRA-CONTRACTUAL OR PUNITIVE DAMAGES

The Plaintiffs would show that State Farm's inspection and adjustment of the claim is suspect at best and summary judgment is not warranted as to the Plaintiffs' claim for punitive or extra-contractual damages.   For the following reasons, State Farm's motion should be denied: (1) State Farm misstates the level of proof Plaintiffs must demonstrate to overcome a summary judgment motion on this issue; (2) State Farm

12

ignores facts and case law crucial to a ruling on this motion; and (3) a ruling on this issue is premature both procedurally and substantively.

Mississippi case law provides the standard for seeking punitive and extra-contractual damages against insurers. The duty of insurers is to "perform an adequate investigation and make a reasonable, good faith decision based on that investigation." *Liberty Mutual Ins. Co. v. McKneely*, 862 So.2d 530, 535 (Miss. 2003). Insurers may be liable for punitive damages for denying a claim in bad faith. *Id.* Insurers may also be liable for extra-contractual damages, "where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger v. Liberty Mutual Fire Insurance Company*, 534 F.3d 450, 451 (5th Cir 2008).

<u>Bad Faith Failure to Investigate</u>

"[A]n insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts." *Bankers Life and Cas. Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss.1986). "An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Id* at 272; see also *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620 (Miss. 1988) ("Mississippi law does indeed impose a duty upon the insurance company to promptly and fully investigate any claim"). In the context of Katrina litigation, the Mississippi Surpreme Court has held that, "An adjuster has a duty to investigate all relevant information and make a realistic evaluation," and failure to do so rises to an independent tort. *Fonte v. Audubon Insurance Company* 8 So. 3d 161 (Miss. 2009) When failure to adhere to such duty to promptly and fully investigate reaches the level of an independent tort, punitive damages may be warranted.

*Lewis v. Equity National Life Ins. Co.*, 637 So.2d 183 (Miss. 1994); *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992).

Defendant State Farm claims that its investigation of Plaintiffs' homeowners claim was prompt and adequate. Plaintiffs will demonstrate the inadequacy of such an investigation, even when measured against State Farm's own internal policy. The Plaintiffs will prove that State Farm denied the claim without adequate information and ignoring the opinion of experts in the field of meteorology and engineering provided, before denial of the claim, to State Farm.

<u>Facts Demonstrating State Farm's Bad Faith Failure to Investigate</u>

Facts and circumstances demonstrating State Farm's inadequate investigation include the following:

First, State Farm summarily denied Plaintiffs' additional living expense and any other claims available to them without waiting to receive its requested engineer's report. Specifically, State Farm requested a report on or about October 7, 2005, but then cancelled the engineer's report on October 12, 2005. (See Activity Log attached as Exhibit 'G'). Denial Letter was issued to the Plaintiffs on November 11, 2005.

Second, State Farm canceled its request for an engineer's report to determine the cause of the Plaintiffs' loss without acknowledgement to collapse, previously reports in the Activity Logs of State Farm. Furthermore, State Farm's adjustor, who is not a meteorologist or engineer, was the sole source for information with which the claim was denied. State Farms' Activity Log reflects no description specific to the condition of the Plaintiffs' own property to support its determination that Plaintiffs' loss was in no way

caused by wind (e.g. the adjuster states the need for an engineering report before estimating damages, there is no address to the trees on the property, etc.).

In sum, State Farm's investigation was wholly inadequate to determine whether the Plaintiffs' property losses and additional living expenses were covered under their State Farm Homeowner's policy. While this weak investigation rises to the level of punitive damages and that it was performed with a clear disregard for the rights of the Plaintiffs, contractual damages to the Plaintiffs are due and this is clearly a factual matter to be determined by a Jury.

State Farm's Burden

Furthermore, State Farm in its so-called investigation attempted to shift the burden onto the Plaintiffs to prove the extent of their wind damage. Yet this Court made it clear that the "burden of proof requires State Farm to establish, by a preponderance of the evidence, what portion of the total loss is attributable to flood damage and is therefore outside the coverage"- it is not the other way around as the Defendant would like to think.  See *Broussard v. State Farm Fire and Casualty Company*, 2007 WL 113942 (S.D.Miss. 2007), reversed on other grounds by *Broussard v. State Farm Fire and Casualty Company*, 523 F.3d 618 (5th Cir. 2008).

### III.    BAD FAITH DENIAL OF INSURANCE CLAIM (PUNITIVE)

As previously stated, a Plaintiff may recover punitive damages for bad faith denial of an insurance claim by showing the insurer denied the claim without an arguable or legitimate basis and with malice or gross negligence in disregard of the insured's rights.  *Wigginton* at 492. An attorney's fee and expenses of the Plaintiff should be awarded when the claim was denied without an arguable or legal basis. State Farm cites

its arguable bases to deny the claim as "there was a question as to the extent of the damage caused by wind." "Our investigation is now complete and we have determined that all of the other damage not previously paid for was a result of flood". (See Exhibit 'D', Denial Letter from State Farm to Plaintiffs) The Plaintiffs will demonstrate that State Farm is mistaken- there is no arguable basis for refusing to pay for Plaintiffs' additional living expenses or other claims when Defendants have acknowledged collapse to the building and the amount of wind damage, by value and replacement cost, had not yet been determined.

<u>Lack of an Arguable Basis to Deny</u>

State Farm, in their Motion for Summary does not indicate why they denied the Plaintiffs' claims, nor have they provided any basis for denial except for the Denial Letter(s) issued to the Plaintiffs pointing to the anti-concurrent causation clause. Additionally, State Farm, defended the denial by stating that the Plaintiffs' residence sustained $250,000 in flood damage and that such was sufficient to render their house uninhabitable. (See State Farm's Motion for Summary Judgment, paragraph 1). Yet this Court has clearly stated that a Plaintiff's acceptance of full benefits under his flood policy in no way forecloses damage from a covered loss. *Payment*, 2008 WL 5003077 at *1. Furthermore, State Farm's own expert witnesses have acknowledged the likelihood of wind damage to the Plaintiffs' property. (See Exhibit 'E', report of State Farm's engineer, The Structures Group, Inc.) Additionally, Defendant State Farm reflected its intention to deny the Plaintiffs' claim before it ever received the engineer's report it requested. (See Activity Log indicating the adjustor's intention to cancel the engineering report, attached as Exhibit 'G') And State Farm still has made **no unconditional**

**payment,** excepting the initial $2,938 for additional living expenses, to the Plaintiffs under their homeowners policy. Hence, there is no arguable basis for determining there has been no wind damage, or such as small portion of wind damage to justify a $2,938 payment for additional living expenses, especially when the policy provides for 24 months of living expenses to the Plaintiffs before receiving a requested engineering report.

Furthermore, there is no arguable basis for failing to subsequently tender any payment for wind damage Defendant's own expert witness has acknowledged subsequent to the initiation of the present lawsuit. This Court has clearly indicated that an insurance company's duty to promptly pay a legitimate claim "does not end because a lawsuit has been filed against it for nonpayment of it." *Bossier v. State Farm Fire and Casualty Company*, 2009 WL 3049282 (S.D. Miss. Sept. 2009).

The Mississippi Supreme Court recently found sufficient evidence to support a claim of gross negligence by the Defendants where the Defendants' adjustor was ordered not to pay 100% of any hurricane Katrina claims along U.S. 90 in the Gulfport, Biloxi, Pass Christian area. *Fonte v. Audubon Insurance Company*, 861 So. 3d 161(Miss. 2009).

In *Fonte,* it is respectfully submitted that this case presents similarly egregious facts: Defendant State Farm failed to consider any specifics concerning the damage to Plaintiffs' property prior to indicating its intent to summarily deny the Plaintiffs' claim. Its own internal records reveals its intentions to deny the claim prior to its investigation: "cancel the engineer's report, as it should not have been ordered" and "we have paid limits on flood. Submit to close." (See Activity Log attached as Exhibit 'G') Furthermore, it has steadfastly refused to pay anything under the policy despite

acknowledgment by its own experts that there was in all likelihood some wind damage to

the property that would trigger 24 months of additional living expenses for the Plaintiffs.

<u>Determination of Bad Faith</u>

State Farm conveniently ignores this Court's refusal to grant summary judgment

as to Plaintiffs' claim for negligence and bad faith based on factually identical grounds.

See *Remel v. State Farm Fire and Casualty Company*, 2009 WL 482131. This Court

stated therein:

> I need go no further in the claim file to see that a final decision to deny the
> plaintiffs' claim was made before the State Farm adjustor in charge of the
> file received the engineering report State Farm had requested...[T]he fact
> that it was made-while an engineering report had been requested and not
> yet received- is sufficient evidence to create a genuine issue of material
> fact on the questions of whether State Farm was acting with reasonable
> care and operating in good faith." *Remel*, 2009 WL 482131 at *2.

There is a sufficient demonstration of bad faith to survive a Motion for Summary

Judgment on for punitive damages where the insurance company makes the decision to

deny before receiving a requested engineer's report.

State Farm also ignores pertinent case law dictating that, even if State Farm can

point to some arguable basis, that the issue of bad faith may still be put before a jury.

*Lewis v. Equity Nat. Life. Ins. Co.,* 637 So.2d 183, 185 (Miss. 1994); *Andrew Jackson*

*Life Ins. Co. v. Williams*, 566 So.2d 1172, 1186 (Miss. 1990) ("Mississippi law has

evolved to a point of recognition that submission of the punitive damages issues may be

submitted – notwithstanding the presence of an arguable basis.") In *Lewis*, a case

involving the adequacy of an insurer's investigation into an insured's claim, the Court

stated that:

> In those cases where there is a question that the mishandling of a claim or
> the breach of an implied covenant of good faith and fair dealing may have

reached the level of an independent tort-*despite the possibility of an arguable basis* for denying the claim, the *Williams* Court outlined the following procedure:

> (1) the issue should be submitted to the jury for resolution; and (2) if the jury resolves the issue against the insurer; (3) the trial judge may upon post-verdict motion and upon reflection find: (a) that the evidence is not supportive of the verdict; (b) that issue should not have been submitted to the jury; and (c) that j.n.o.v. or a new trial should be granted.

*Lewis* 637 So.2d at 185, quoting *Williams*, 566 So.2d at 187 (emphasis added)

In another case where the Mississippi Supreme Court examined the question of a bad faith denial of claim, the Court, while finding that the insurer did indeed have a legitimate or arguable basis for denying the insured's claim, determined that the jury was properly allowed to consider and conclude that the insurer's failure evidenced bad faith and that punitive damages were proper because evidence also suggested that there were questions of fact regarding the adequacy of the insurer's investigation. *Stewart v. Gulf Guaranty Life Ins. Co.*, 846 So.2d 192 (Miss. 2002). Thus, Mississippi case law is clear that even where an insurer can point to a legitimate or arguable basis for denying an insured's claim, that where there is evidence that tends to show that the insurer's investigation was not made in good faith, summary judgment should be denied.

The foregoing cases make another point that expose the error in State Farm's argument, to wit: that this issue is grossly premature. As stated *supra* in *Lewis*, *Williams*, and *Stewart*, when there is a fact question as to the level of adequacy of the insurer's investigation, it is appropriate to submit that question to the jury. At that point, the jury must first find that the insurer wrongly denied the claim before the jury even considers the question of whether the insurer's actions amounted to bad faith or to an independent

tort.  Then, even if the jury finds that State Farm's actions rose to the level of an

independent tort, a court "may upon post-verdict motion and upon reflection find: (a) that

the evidence is not supportive of the verdict; (b) that issue should not have been

submitted to the jury; and (c) that j.n.o.v. or a new trial should be granted." *Williams*, 566

So.2d at 187.  Thus, because this Court will have ample opportunity to make a ruling on

this issue at a later point in time when all of the facts and evidence are before it, it is

respectfully submitted that a ruling at this point in the litigation would be improvident.

Showing of Actual Malice or Gross Negligence

State Farm argues that Plaintiffs' bad faith failure to investigate Plaintiffs' claim

should be denied because Plaintiffs cannot make the additional showing that State Farm

acted with actual malice or gross negligence.  Once again, State Farm has ignored

pertinent language of the Mississippi Supreme Court on this issue.  In *Lewis* 637 So.2d at

186, quoting *Merchants Nat. Bank v. Southeastern Fire Ins. Co.*, 751 F. 2d 771, 775 ftn.3

(5th Cir. 1985), the Court explained that:

> [R]equiring a trial judge to determine whether there is sufficient evidence
> of wrongdoing to place the issue of punitive damages before the jury
> 'would often be superfluous since an insurer's failure to pay a claim
> without an arguable reason is usually tantamount to wilful or grossly
> negligent refusal to pay.'

In other words, if State Farm is found by a jury to have denied the Plaintiffs'

claim without an arguable reason, and the conduct of State Farm has been deemed by a

judge and a jury to go beyond mere negligence and to the level of an independent tort,

then a showing of gross negligence clearly would have been made.  As explained *supra*,

State Farm violated its own stated policy, prematurely denying Plaintiffs' claim without

any record of investigation specifically considering the damaged areas of the residence,

20

investigations by adjustors who refused to acknowledge any wind damage to Plaintiffs' dwelling notwithstanding extensive roof damage and broken windows on the second floor and who failed to interview eye witnesses in the area, and also failed to pay any amount to the Plaintiffs under the Loss of Use coverage of their homeowners' policy despite acknowledged wind damage to both the roof of the dwelling. It is respectfully submitted that the foregoing facts are sufficient to demonstrate that summary judgment is inappropriate and a jury should be able to consider all of the facts and render a conclusion. By demonstrating State Farm's "gross or willful wrong", Plaintiffs thereby demonstrate their entitlement to attorney fees.

## IV    MISREPRESENTATION AND REFORMATION

State Farm prematurely seeks Summary Judgment on the Plaintiffs' claims for misrepresentation and reformation. Both causes of action allege fraud- that State Farm made numerous fraudulent misrepresentations to Plaintiffs, namely its representations that it had conducted an investigation upon which it reached the conclusion that the cause of the Robohms' loss was most entirely flood and that their additional living expenses would not be covered and that State Farm's investigation was "now complete" even though they didn't receive the engineering report until four months after the denial of the claim – an engineering report they said in their own records was required to make that determination. Also, they had not investigated the cause of the collapse of the home or the cause of the trees landing onto the home by the time they denied the claims on November 11, 2005. Although the Plaintiffs were entitled to additional living expenses, State Farm, without reliance on anything other than their own opinion they arbitrarily decided that they had paid enough additional living expense in the sum of $2,938 as

compared to the wind damage caused to the residence and then abruptly denied their claims.

State Farm's adjuster, Bruce Meeker, told the plaintiffs that an engineering report would be necessary before determining the division of the damages; however, shortly thereafter, Bruce Meeker did cancel the engineer's report and denied the claim arbitrarily. See the Activity Log attached as Exhibit 'G'.

State Farm's request for summary judgment on these matters is not ripe because the Mississippi Supreme Court has established that summary judgment is not an appropriate stage for disposition of allegations of fraud or misrepresentation because they are fact-intensive determinations. *Great Southern National Bank v. McCullough Environmental Services, Inc.*, 595 So.2d 1282, 1289 (Miss. 1992); see also the *Encyclopedia of Mississippi Law*, § 21:55 (2008). This Court should therefore deny Defendants' motion as it relates to the claims of Fraudulent Misrepresentation and Reformation.

Negligent misrepresentations requires a showing that there was 1) a misrepresentation (or omission) of a fact; 2) that the misrepresentation (or omission) was material or significant; 3) that the misrepresentation (or omission) was the product of negligence, i.e. that the person making the representation or omission failed to exercise reasonable care; 4) that the person to whom the representation (or omission) was made reasonably relied upon the representation (or omission); and 5) that the person to whom the representation (or omission) was made suffered damages as a direct and proximate result of that reasonable reliance. *Berkline v. Bank of Mississippi*, 453 So.2d 699 (Miss. 1984).

In the present case, Defendant State Farm made a material misrepresentation by sending out a denial letter on November 11, 2005 informing the Plaintiffs that it determined the damage to their claims would not be covered because of the anti-concurrent causation clause in their policy and because they determined they paid enough already on their additional living expenses, compared to their opinion of the wind damages. Yet the claim file clearly indicated that the decision had been made to deny the Plaintiffs' claim before an engineer ever inspected the property and before it reviewed the engineer's report it requested. This representation was material because it meant Plaintiffs would receive no benefits under their wind policy for additional living expenses- which they believed would cover them in the event of a hurricane. State Farm Adjustor Bruce Meeker, as well as those supervising him, failed to exercise reasonable care when they proceeded to deny Plaintiffs' claim despite the fact that no engineer had provided a report and that the eventual report, received four (4) months after the denial of the claims, was inconsistent with the trees on the house. With this information, a reasonable person would- and should have- recognized the impact of the wind damage on the property to avoid unnecessary anguish for the insureds. Plaintiffs reasonably believed, based on the denial letter, that State Farm would not recognize that any wind damage occurred to their property triggering the Loss of Use provision and accordingly would receive no proceeds under the policy. This upsetting information caused mental anguish to the Robohms. Therefore Plaintiffs' should defeat any summary judgment motion for negligent misrepresentation.

## V  NEGLIGENCE

"An adjuster has a duty to investigate all relevant information and must
make a realistic evaluation of a claim." *Bass v. California Life Ins. Co.,*  581 So.2d 1087,
1090 (Miss. 1991) citing *Banker's Life & Casualty Co. v. Crenshaw,*  483 So.2d 254,
272, 276 (Miss. 1985). Agents for disclosed principals who fail to adhere to this duty
shall incur individual liability if their conduct in accord with same is grossly negligent,
malicious or recklessly disregards the rights of the Plaintiffs. *Conyers v. Life Ins. Co. of
Georgia,* 269 F.Supp.2d 735, 738 (N.D. Miss. 2003); *Hart v. Bayer Corp.,* 199 F.3d 239,
247 (5th Cir. 2000); *Phillips v. New England Mut. Life Ins. Co.,* 36 F.Supp.2d 345, 348
(S.D. Miss. 1998); *McFarland v. Utica Fire Ins. Co.,* 814 F.Supp. 518, 521 (S.D. Miss.
1992); *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss. 1991); *Dunn v. State
Farm Fire and Casualty Co.,* 711 F.Supp. 1359, 1261 (N.D. Miss. 1987). "Simply put,
where the complaint includes allegations which establish a separate and independent tort
against the agent, individual liability on the part of the agent will attach." *James v. Chase
Manhattan Bank,*  173 F.Supp.2d 544, 550 (N.D. Miss. 2001) citing *Gray v. United States
Fidelity & Guaranty.,* 646 F.Supp. 27, 29 (S.D. Miss. 1986).

State Farm made an arbitrary decision regarding the wind damages caused to the
home at issue and paid a grossly low sum as coverage. This caused the Plaintiffs injury
by the loss of the monies spent, out of their pockets, to pay their additional living
expenses while not being able to live in their destroyed home. They were caused emotion
distress by State Farm's failures and negligence. State Farm's evaluation of Plaintiffs'
claims was not only grossly negligent, but recklessly disregarded Plaintiffs' right to have
a full and fair evaluation of their claim. State Farm's motion for summary judgment as to

negligence should be denied accordingly. These are clearly factual matters that must be determined by a Jury.

## VI    DECLARATORY JUDGMENT

State Farm alleges that Plaintiffs claims for declaratory judgment because it is contrary to established precedent and then, bizarrely, State Farm sites the recently decided *Corban vs. USAA* case for the position that the policy provisions in question are unambiguous and the anti-concurrent is effective. Plaintiffs submit that a fair reading of the *Corban* case, and its facts, as applied to this instant matter are contrary to State Farm's response and support unequivocally the Plaintiffs declaratory judgment in this matter.

## VII.    WAIVER AND ESTOPPEL CLAIMS

State Farm should be estopped from offering any reasons or facts to justify its denial of the Robohm claim other than those gathered as part of a timely claim investigation and relied upon as a basis for its prior denials of said claims. "A waiver is a voluntary and intentional relinquishment of a known right, or conduct that warrants an inference of such relinquishment." *Highlands Insurance Company vs. Allstate Insurance Company*, 688 F.2d 398, 404 (5th Cir. 1982). Where the facts are undisputed . . . waiver is a question of law. *Id.* As set forth in the exhibits incorporated herein, and summarized above and below, the evidence is **undisputed** that State Farm had no proof in its claims file to support its denial of the Plaintiffs' claims. Clearly, the "facts" which State Farm is attempting to offer at trial, through "expert" testimony and otherwise, were not gathered and/or relied upon as part of State Farm's pre-denial investigation of the Robohm claim.

As such, State Farm made a "voluntary and intentional relinquishment of a known right, or conduct that warrants an inference of such relinquishment." 688 F.2d at 404. Accordingly, State Farm waived its right to assert another "expert's" opinion and/or "new" or previously un-relied upon "facts" to support its denial of the Robohm claim, or to offer any evidence not consulted and referenced as having been consulted as part of its pre-denial investigation, *as a matter of law*. No doubt a similar argument was what the Mississippi Supreme Court found would have been *cogent* ("convincing or believable by virtue of forcible, clear, or incisive presentation", *The Random House College Dictionary*, Revised Edition (1975)) to an exclusion of evidence in *Bankers Life and Casualty Co. v. Crenshaw,* 483 So.2d 254, 270 (1986).

The Mississippi Supreme Court's insistence that an insurance company make a "full and thorough" investigation *before* denying a claim, and recent clarification in *United American Insurance Company v. Merrill,* 978 So.2d 613 (Miss. 2007) (*reharing denied* 11/1/2007) (*cert denied* 128 S.Ct. 1257 (U.S. Miss. Feb. 19, 2008)) that an insurance company must be satisfied with the information in its claims file as the basis for its denial of a claim, make sense. State Farm would have this Court allow it to shirk its duty to conduct a full and thorough investigation <u>before</u> denying the Robohm claim, only to be allowed to offer previously unsolicited and/or un-relied upon "expert" opinions and "facts" to support it denial of the Robohm claim it appears litigation will be pursued. Allowing such conduct would be tantamount to sending a message to insurance companies doing business in this State that it is no longer necessary to conduct a meaningful investigation *before* it denies a claim, and that there will be no repercussions as long as it can obtain a hired gun to support a defense *if* litigation is pursued. Plaintiffs

respectfully submit that good sense public policy, in addition to controlling law, demands such a message *not* be sent.

Plaintiffs respectfully request this Court be estopped or prohibited from offering any testimony or opinions or facts not gathered as part of a timely, "full and thorough" investigation and/or relied upon as a basis for its numerous denials of Plaintiffs' claims; and prohibiting State Farm from offering any documents or evidence whatsoever not contained within and/or specifically and expressly referenced in State Farm's claims file, activity log and/or the subject policy of insurance, in support of its denial of Plaintiffs' claims; and preventing counsel for State Farm from making any reference to and/or argument regarding same in the presence of the Jury, and granting any and all additional relief, in favor of the Plaintiffs, deemed appropriate by this Honorable Court.

## CONCLUSION

Clearly for all the reasons that have been cited herein, there are numerous, significant, genuine issues of material fact in this matter and State Farm is asking this Court to commit serious reversible error in its Motion. This case is filled with disputed factual issues and matters that must be determined by a jury pursuant to both federal and Mississippi law.

WHEREFORE PREMISES CONSIDERED the Plaintiffs respectfully move that this Court deny State Farm's Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment, and furthermore, enter any and all relief necessary to

accompany such relief.

RESPECTFULLY SUBMITTED this, the 29th day of January, 2010.

DONALD ROBOHM and NATALIE
ROBOHM, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC


BY:    /s/Stephen W. Mullins
          STEPHEN W. MULLINS

STEPHEN W. MULLINS (MS Bar #9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102  (39564)
P. O. Box 990
Ocean Springs, MS   39566-0724
(228)875-3175 - Telephone
(228)872-4719 - Facsimile

## CERTIFICATE OF SERVICE

I, Stephen W. Mullins, counsel for Plaintiffs, do hereby certify that I have this day
electronically filed the foregoing with the Clerk of this Court using the ECF system
which sent notification of such filing to all Counsel of Record in this Court.

THIS, the 29th day of January, 2010.


    /s/Stephen W. Mullins
       STEPHEN W. MULLINS